United States v. Jackson Ms. Lourish You're the public defender out in Western Virginia. That's correct, your honor. Good to have you here. Good morning, your honors. May it please the court. Mr. Jackson served 57 months more for his crack cocaine offense than the guidelines in his case with the 3553 sentencing factors would support. The district court decided to impose a sentence of time served in response to his first step back motion instead of a sentence of 120 months based on one factor, avoiding banked time that would accrue in the Bureau of Prisons. And the district court was wrong to do this in the instant case because she misunderstood how banked time operates. But it would also be wrong for a district court to ever consider banked time in imposing a criminal sentence. Well, you know, Judge Dillon wrote this opinion and district judges all over the country now are following suit with her position on banked time because obviously that's a policy issue. I take it that you feel that banked time should not even play in the 3553A analysis. That's correct, your honor. And what do we do then with the banked time issue? Well, I think there's the way that Judge Dillon analyzed it, and I think that was incorrect because she was focused on the mistake of law or the factual misdetermination that banked time would apply as an offset for new criminal behavior when that's not how banked time applies. And no one has argued that that would ever be the case for Mr. Jackson. He can absolutely be prosecuted for a new federal, state, local offense, and he would have to serve that entire sentence. The only way banked time would come into play for Mr. Jackson is if he's given a sentence of incarceration for a violation of the supervised release. Because that's considered the same offense under this court's law, under the law of the Supreme Court, that would apply in that case. And the reason why the district court erred in finding, besides what appears to be the misunderstanding about how banked time would apply, but banked time should never be a consideration under the 3553 factors because it conflicts with what Congress has said in 18 U.S.C. 3585, which is the statute where we get banked time from. And that statute says an offender should be given credit for the time he or she serves before a sentence starts. So when Mr. Jackson has over-served by 57 months, that should be credited under 18 U.S.C. 3585 to any revocation of the supervised release. So we shouldn't worry ourselves about banked time because if he commits another crime, obviously he can be prosecuted and sentenced for that. And so we just ignore the idea that he can snub his nose at the period of revocation that he has. Well, Your Honor, he can't snub his nose at the period of revocation because he's still under an eight-year term of supervised release. And it's important that this is a fact that distinguishes this case from what the Supreme Court considered in Johnson or what the court considered in the Ketter case. He's not asking for that eight-year supervised release term to be changed in any way. He's simply asking for his sentence to reflect what the 3553 factors would support. And he still will be under an eight-year term of supervised release. He can be absolutely arrested for any violation of supervised release. And technical violations of supervised release could still be addressed through a small period of incarceration in this case. And so it's worth the court considering that it's fundamentally speculative for a district court to think, well, I need to have a really big stick. The defendant needs a really big stick of five years in this case, the potential prison time for a violation of supervised release. And that's the only way that supervised release could be effective. We know that's not true because already under 18 U.S. 3583e, there's different sizes of sticks available. For a defendant with a Class A felony, that defendant could have up to five years. of imposed time for revocation. But a defendant with a Class F felony, or Class E felony, I apologize, Your Honors, could only have one year. The difference in amount of time someone could face for a violation doesn't impact what probation does for someone on supervised release, which is fundamentally about rehabilitation. No matter the size of the stick, probation can work with the offender and can make sure that the offender has the services that they need and be completely consistent with the purposes of supervised release. What the district court did in this case, and what a district court would do in any case where it focuses on avoiding bank time, is prevent Mr. Jackson from the only recompense he essentially has for having over-served 57 months. He can't get any money for that. He can't get that period of his time back. But what the Supreme Court said in the Johnson case is that there are, quote, equitable considerations of great weight that exist when an individual over-serves their period of incarceration. But the court in Johnson also didn't give him the benefit of that additional time. He just lost it because he couldn't reduce his supervised release. The court said, Your Honor, though, that there's two ways he can get that benefit. He couldn't reduce the statutory required term of supervised release, but the court absolutely said he could come back and say, because of this bank time, because of this over-served time, you should lessen the conditions I'm under for supervised release, and you should also consider that when I come back in a year, when I start a year of my, in this case it would be 8-year term of supervised release, as a reason to reduce the overall term and end the term of supervised release early. Mr. Jackson can't do that. He can't do those very things that the Supreme Court in Johnson suggested would be entirely appropriate considerations in light of over-served time because the opinion below doesn't say he over-served by a single day. The opinion below is he served the exact right number of days, that the sentence of time served is appropriate. And that is why the decision conflicts with what the Supreme Court teaches in the Johnson case, that there are actual equitable considerations here that Mr. Jackson can't take advantage of. It also conflicts with the intent of Congress. What would you like Judge Dillon to do? I'd like this court to reverse the case for Judge Dillon to sentence him to 120 months, which is the— Do you want a specific sentence of 120 months? That's right, Your Honor. And that would be, in this case— That would give him credit. That would be 57 months less than he got, you're saying. I think it works out. It's hard to always tell with the Bureau of Prisons, frankly. I think it will work out to be about 57 months that he served. That would be too long. But that sentence is appropriate as a matter of considering the 3553 factors. But if we think about it, it's also appropriate because we want sentences to be accurate. People are collecting data right now. The United States Sentencing Commission is collecting data about the impact of the reductions for the First Death Act. What I'm wondering is it's—the district court, you would agree with me, has broad discretion when it comes to sentencing. They have to consider certain factors, but when they sentence, they can—we review at a very high level. Here we're reviewing for abuse of discretion. I agree, Your Honor. We need to be able to find that the district court abuses its discretion when it considers banked time in revising a sentence under the First Death Act. Is there—what would you point to as the best evidence you have for us, the best legal evidence you have for us, that a district court cannot consider banked time, that it abuses its broad discretion? So in this specific record, Your Honor, I think there's both procedural error and substantive error. The procedural error, which this court would count as an abuse of discretion, is the fact that the district court appeared to misunderstand. Well, she meant—she talked about it in a way that you say is not precise. But if we say no other—no court can consider—the banked time is not an appropriate consideration when you're revising a sentence. And that would fall under the substantive error category, Your Honor, where it's inappropriate. It's not a 3553 factor, fundamentally. It's not there. But the court doesn't have to consider 3553 factors at all, right? Because we're under the First Death Act. We're under C-1B, which doesn't even mention 3553. I think the parties, Your Honor, both agree. The government agrees. The district court agrees. Everyone agrees that even under the First Death Act, the court has to consider the 3553 factors. They're appropriate considerations, but are they limitations? I think they are, Your Honor. In the same way, we would have a different case presented if the district court didn't provide any analysis whatsoever. Then we might be in a situation of wondering, well, why did she impose a sentence of time served instead of a different sentence? But here, we actually have the 3553 analysis, and this court has to consider whether it was appropriate. So where am I told that the court is limited to the 3553 factors when they're doing a First Death Act revision of a sentence? Well, this is a new consideration of law, Your Honor, in this circuit. But we know, as you correctly cited, that we start with 3582 C-1B, the court's authority to reduce an otherwise final judgment, when there's a new statute that expressly authorizes it. So then we turn to the First Death Act, where Congress chose to use the word impose, which is the same word it uses in 3553 for imposing a sentence and tells courts when they are imposing a sentence, these are the factors they need to consider. The district court got that point right. The government agrees. We have to start and end with the 3553 factors here. The government just takes the position that what the district court did was consistent with the 3553 factors. I doubt the government would agree with you that you end with the 3553 factors, but I don't think that's right in this case. Well, we'll see. You might be right, Your Honor. But I do think that the 3553 factors here, that bank time doesn't factor in, and it kind of runs up against another decision from the Supreme Court, the Tapia decision, which I didn't address fully in the briefing for this court, but that's 564 U.S. 319, where the Supreme Court said unanimously you can't increase period of incarceration for rehabilitative reasons. And fundamentally, the district court didn't say that's what she was doing. She framed it in terms of deterrence. She framed it in terms of protection of the public. But that's not right because he can still be deterred by being arrested for a new crime. He can still – the public can be protected by arresting him for new crimes. So really, the district court sort of speculatively, and the other district courts who have followed suit, are saying we have to have this punishment out there to ensure someone is going to succeed on supervised release, which is about rehabilitation, which the Supreme Court has said you can't increase the term of incarceration for rehabilitative reasons. That comes directly from the text of 3553A. And so fundamentally, there's a substantive error here in the sentencing consideration, and I think it's inconsistent with the first step back, which asks the court to impose a new sentence. And again, the word impose drawn upon the 3553 factor. So I think for that reason, the court can reverse, and the district court should reimpose a correct sentence, which in this case would be 120 months, which of course is substantially above the drug weight guidelines Mr. Jackson would have even faced in this case. His drug weight guidelines were only 51 to 61 months. It only got increased to 120 months because of an 851 enhancement. So additional reasons why the minimum sentence here of 120 months is far more appropriate than the 57-month upward variance. If there's any other questions, I'll reserve the remainder of my time. Thank you. Ms. Brockhurst? Good morning. Your Honor, with all due respect to Ms. Lourish, her entire argument begins with a fallacy of reasoning. And that fallacy is that he is somehow entitled to a guideline sentence, and he is entitled to a consideration of what the appropriate sentence should be, as if there was no sentence currently imposed. In fact, what the First Step Act does is give the authority to the court in its discretion, if it determines it is appropriate, to grant a reduction from the lawful sentence that was previously imposed. And because it is a reduction that this court is reviewing, not a sentence from the bottom up, the standard is quite different on review, and most of Ms. Lourish's arguments kind of fall back. He's not entitled to a guideline sentence. He is not entitled to a reduction. He is not entitled to the full consideration of the 3553A factors and an opinion that lays out the full weighing of the factors and the guidelines. He is not even entitled to the benefit, necessarily, of the reduced guidelines. The sentence that is currently imposed, that was previously imposed, is a reasonable sentence. It's already been sustained in some form as a reasonable sentence, either because it was not appealed. You're talking about the 240 months? Yes. And the courts have already said that when granting a reduction under 3582C, that because that first sentence was already reasonable, a reduction somewhere between the new guidelines and the old sentence is, of course, also reasonable. Because if 240 months was reasonable, then certainly whatever the time served sentence is also reasonable. And the court is not required, the district court is not required, to weigh the factors in the same way it would as an additional. Do you think it's an error for the court to rely on bank time? Absolutely not, Your Honor. All of the case law in 3582C makes it clear that policy considerations are an appropriate consideration. Under 3582C2, those are embodied in the guidelines, but there are certainly policies that should control what kind of reduction is given, even outside of the context of guideline reductions. And as this court said back in the early 70s, creating a bank of time that is going to be used to offset future conduct is an unthinkable policy. And Ms. Lorsch tries to divert attention from that by saying any criminal conduct can be sentenced and dealt with accordingly. But most of the conditions of supervised release are about committing crimes, they're about administering the supervised release itself, about making sure the defendant stays in the district, reports to the probation officer, gets the appropriate treatment, for example. And if he has a bank of time, there's no recourse for the court to penalize, or no incentive for the defendant, as Judge Dillon pointed out, for him to comply. Because they can bring him into court, but he knows he has already served all of the penalty that could be imposed. It makes supervised release ultimately unadministratable, if that is a word. And that is why, I think, court after court across the country has considered the bank time and refused to sentence below time served. I would also submit that the standard of review that Ms. Lorsch argues for is overly expensive. If we think there's an error, or you've got a harmless error fallback argument? An error in considering the bank time at all? Do you argue a harmless error? Yes, sir. How is it harmless? It is harmless because Judge Dillon identified other considerations as well. She has broad discretion in determining what the appropriate sentence is, and therefore the sentence has not affected his substantial rights. And Ms. Lorsch, the defendant's argument is that it has because he is somehow entitled to a guideline sentence. And that is just not accurate under a 3582 proceeding. You say, I understand, you argue it's no error here. Yes. But if it is, it's harmless. Yes. And what he ended up with is, what, 177 months? I believe roughly. Right, yeah. Fourteen years and nine months total. The court has no other questions. Thanks very much. Thank you. Ms. Lorsch? Thank you, Your Honor. So first, by the very nature of the government's argument, the error can't be harmless. Otherwise, it wouldn't be here. We wouldn't all be so concerned about the argument Ms. Bockhorst has just made. Is there enough of an incentive on supervised release for him to do what he's supposed to do if there's bank time? It proves it's not harmless. If he got the sentence of 120 months that I argue the 3553 factors supported here, he would have less exposure for any future violation of supervised release. And that's not a hypothetical change in exposure. That's the actual exposure he, today, as someone on supervised release, would face. That's not insignificant. That is an error that would change his actual position. So the government's very argument sort of undermines, I think, the harmless error analysis. And it's not like the Ketter case, which I think is the closest analogy this court has, where, again, that defendant was asking this court to change the actual number of years of supervised release, and the court actually had reduced the term of supervised release already in light of the overserved time. And so the court found no harmless error in that scenario. But this is different. He actually faces different exposure. And then the government acts as if there's this body of case law about, well, any time there's a reduction under 3582C, it's obvious that there's a more reduced standard of review. That's just simply not the case. There's a body of case law that it goes to 3582C2, and it makes sense that this court has less review, and the district courts are constrained their 3582C2 drug reductions, because 3582C2 says the district court has to follow what the sentencing commission says and the policy statements of the sentencing commission. And then the policy statements of the sentencing commission set out in Guideline Section 1B1.10 specifically outline all the ways a district court's discretion is limited. We don't have that here. Congress passed the First Step Act in full consideration of the recent guideline amendments and how those have been implemented and chose to not, specifically to not put those sorts of limits on a district court. And so I think we have to start with the premise that when a court is supposed to impose a sentence, the government's suggestion that, well, because the original sentence, which was based on a mandatory minimum, by the way, that no longer applies under the law, that's not reasonable anymore. We can't start from the premise that 240 months is reasonable when the actual change to the law that happened here was saying no, 240 months. Fundamentally, Congress is saying that's not a reasonable mandatory minimum anymore for his conduct. Do you agree that 3582 resentencings are not plenary? They're not plenary resentencings, but they're just revising a later decision. The Supreme Court has said it's not a plenary resentencing. It said that for 3582C2 proceedings, Your Honor. And this case simply doesn't present that question because nothing that Mr. Jackson has asked for. Why is C1 different than C2 in that regard? Well, because C2 directs us to the Sentencing Commission and amendments of the Sentencing Commission and the policy statements of the Sentencing Commission, whereas C1b just directs us to the First Step Act and the limitations that are in the First Step Act, which are very few. But this case ultimately doesn't raise that question, and there are other cases in the pipeline that do. There are fewer restrictions on the district court, not more. There are far fewer in this case because there's no policy statement telling the district court you have to follow, you can't sentence someone to less than the bottom end of the amended guideline range. The only limitation is you have to sentence someone within the new mandatory minimums that were passed in the Fair Sentencing Act, but that's it. And you can't grant a First Step Act motion if someone was already sentenced under the Fair Sentencing Act penalties. They can't get a second bite at the apple and come back if their sentence was in 2012, for example, and bring out a motion now. But beyond that, the First Step Act doesn't provide any limitations. It would be inappropriate to import limitations that were based on a policy statement of Congress that Congress, sorry, I apologize, a policy statement of the Sentencing Commission that Congress did not import and could have into the Fair First Step Act. And finally, I want to say it's incorrect that Mr. Jackson would have no incentive to comply with supervised release and that for some reason that he could just do whatever he liked and ignore his probation officer, that another similar situated defendant would not have an incentive to comply with supervised release because of a bank of time, and that's simply because the bank of time only applies as a practical matter after a sentence of revocation is given and someone is sentenced to the Bureau of Prisons. Anyone who violates their supervised release can still be arrested. Their lives are disrupted. They're held in local custody while the revocation proceeding is pending. If they aren't released pre-trial detention or pre-revocation hearing detention, they can be held for as long as it takes for the revocation to be resolved, and only if the point comes when the court sentences them to a period of incarceration in the Bureau of Prisons does bank time ever come into play. So there would still absolutely be reasons for Mr. Jackson to follow the orders of his probation officer and, of course, to take advantage of the rehabilitative benefits, which is what supervised release is about in the first place. Thank you, Your Honors. Thank you.
judges: Robert B. King, Henry F. Floyd, Allison J. Rushing